THE BRITISH COMMERCIAL LIFE INSURANCE COMPANY, Plaintiffs in a writ of *certiorari*, Appellants, etc., *v.* THE COMMISSIONERS OF TAXES AND ASSESSMENTS FOR THE CITY AND COUNTY OF NEW YORK, Respondents.

The language of the act of February 27, 1855, subjecting to taxation "all (nonresident) persons and associations doing business in the State of New York," is comprehensive enough, either under the term "persons" or "associations," to embrace foreign insurance companies.

A foreign life insurance company doing business in this State is properly taxable in the city where the principal place of business, or office, of the agency is situated.

Where a foreign insurance company, in pursuance of the provisions of the act of 1853, deposited with the comptroller of the State $100,000, for the benefit of such of its policy holders as should be citizens of this State, of which $50,000 was in public stocks of the United States, and $50,000 in bonds of the city of Buffalo; *Held*, that the $50,000 of government stocks was exempt from State taxation; but that the bonds of the city of Buffalo deposited with the comptroller were subjected to taxation.

APPEAL from a judgment of the General Term of the Supreme Court, affirming the judgment of a Special Term, on *certiorari*.   The plaintiffs are a corporation, incorporated by act of Parliament of the United Kingdom of Great Britain and Ireland, passed in 1821, and are authorized by their charter to make insurance on lives.   They have never been incorporated in this State.   They have sixty-eight agencies in the United States, and twenty-eight agencies in different counties in this state, for the purpose of receiving applications for insurance.   The agents receive applications for insurance, and upon approval of the risks by the directors in England, the policies are made out and transmitted to the agents here, who transmit to the company the premiums received by them. The losses are paid through the agents.   By an act passed the 24th day of June, 1853 (chap. 463), it was provided, in the 15th section thereof, that it should not be lawful for any person to act as agent in transacting the business of any life or health insurance company, partnership or association, incorporated by or under the laws of any foreign government, until such companies should have deposited with the comp-

troller, or superintendent of the insurance department, for the benefit of such policy holders thereof as should be citizens or residents of the United States, securities to consist of public stocks to the amount of $100,000. The plaintiffs deposited with the comptroller of this State, pursuant to the provisions of this act, the sum of $100,000, consisting of $50,000 of the bonds of the city of Buffalo, and $50,000 of the public stocks of the United States of America, for the benefit of policy holders, citizens or residents of the United States. On the 27th of February, 1855, an act was passed providing for the assessment and taxation of all persons and associations not resident of this State, doing business in this State. This act provided, in substance, that all persons and associations doing business in the State of New York, and not residents of this State, should be assessed and taxed on all sums in any manner invested in said business, in. the same manner as if they were residents of this State. (Laws of 1855, chap. 37.) The deputy tax commissioners for the year 1857–8, under the direction of the commissioners of taxes and assessments, within the time required by law, assessed the personal property of the plaintiffs at $100,000. (Laws of 1857, pp. 498, 499, vol. 2, § 10.) That assessment was made in respect to the $100,000, of stocks and bonds deposited with the comptroller as above set forth, and is claimed to be authorized by the act of 1855. The principal office or agency of the plaintiffs is in the first ward of the city of New York. The plaintiffs sued out a writ of *certiorari* to review the action of the commissioners. Judgment was rendered thereupon, at special term, reversing the proceedings of the commissioners as to the $50,000 of United States stock, and affirming the assessment in respect to the $50,000 of Buffalo city bonds. From this judgment both parties appealed to the General Term, which affirmed the judgment given at Special Term, and both parties now appeal to this court.

*Chas. A. Rapallo*, for the insurance company.

*A. R. Lawrence, Jr.*, for the commissioners of taxes.

HOGEBOOM, J.   I think the language of the act of 1855, in subjecting to taxation "all (non-resident) persons and associations doing business in. the State of New York," is comprehensive enough, either under the term "persons" or "associations," to embrace foreign corporations like the applicants in this case, under the statutory and judicial definitions annexed to those terms; and that there is no sound principle of equity or public policy which should exempt them, more than others, from the burdens of government.   Whatever may have been the leading or proximate motive for the passage of this act, the generality and comprehensiveness of its terms, in my opinion, forbid the exclusion of companies like the present from its operation. I think, also, in analogy to the general statutory rule as to the place for taxing corporations (1 R. S., 390, 1st ed.; 909, 5th ed.), it was properly taxable in the city of New York, where the principal place of business or office of the agency is situated.

The only real embarrassment arises upon the other ground of exemption claimed by the applicant, to wit, that the moneys deposited with the comptroller or insurance superintendent for the benefit of such of the policy holders as should be citizens of the State, are not sums invested in any manner in the business of said corporation.

The argument of the applicant is that this deposit is not a sum invested in its business, but withdrawn therefrom — separated from the other assets of the company, constituting a special trust fund in the hands of the comptroller, not subject to the control of the company nor liable to the claims of its general creditors, but declared by law to be merely a security to its policy holders, residents in or citizens of the United States; and if invested in the business of the company, is not invested in its business done in this State, inasmuch as it is a security for all its policy holders in the United States.

The argument of the tax commissioners is that the relators are doing business in this State, inasmuch as they have twenty-eight agencies for the purpose of receiving applica-

39

tions for insurance, transmitting applications to the principal, delivering policies, collecting premiums, and paying losses; that domestic insurance corporations of a like character thus doing business are, by the Laws of 1853 (pp. 888, 889, 1029, 1030), required to have a *capital* not less than $100,000, which is to be invested in *stocks*, deposited with the comptroller as *security* for *policy holders*, and are by the general laws of the State taxed therefor as *capital* (1 R. S., 944, 5th ed.); that it is apparent from the phraseology of the 15th and other sections of the same act (Laws of 1853, p. 893), that the legislature intended to impress the same character upon the deposits of foreign life insurance companies, inasmuch as they prohibited any agent of a foreign company to act in any manner in this State in procuring applications for insurance, or in any manner to aid in transacting its business until $100,000 were deposited with the comptroller for the benefit of citizen or resident policy holders, in securities " of the kind required by section sixth for similar companies of this State;" that the deposit is, therefore, made for a kindred, and indeed, identical purpose with that required of domestic incorporations; and must be regarded as *capital* for the same purposes and with like effect as in the case of domestic companies, and embraced within the definition of the capital of a corporation declared by this court in the case of *The Mutual Insurance Company* v. *Supervisors of Erie* (4 Comst., 448) to wit, the fund upon which it transacts its business, which would be liable to its creditors, and in case of insolvency pass to a receiver; and that whether this fund is to be regarded as capital or not, it comes within the comprehensive language of the act of " sums invested *in any manner* in its business;" that it is invested in its business, because it is the fund or foundation upon which it does its business, a prerequisite to the transaction of its other business, a fund to which the creditors or policy holders resort for payment, which cannot be withdrawn from its business, which measures, in a more convenient way than any other which the legislature could prescribe, the extent of its business; and which furnishes the only medium through which

foreign organizations of this nature can be reached for the purposes of taxation, or placed upon a similar level of liability with domestic corporations.

These considerations are preponderating, in my mind, to lead me to the conclusion that the relators are brought within the scope and operation of this act of 1855, for the purposes of taxation. I cannot express them in greater force, and I do not deem it necessary to expand the arguments enforcing their applicability to the case under review.

There is nothing in the decision of this court in the case of *The People* v. *The New England Insurance Company* (26 N. Y., 303), which conflicts with the conclusion just announced. The act of 1853 before mentioned repealed the act of. 1851 (chap. 95), which required a deposit of stocks, from insurance companies of *other States* doing business in this State, but compelled such deposit from insurance companies of *foreign countries*. The stocks of the New England company remaining with the comptroller were therefore regarded in the light of a *voluntary deposit* in no way connected with its business nor accessible to the claims of its creditors. There is nothing, therefore, in the point in judgment in that case which interferes with the application of the equitable principle proposed to be enforced in the present case.

The decisions of the Special and General Terms of the Supreme Court were therefore in all respects correct, inasmuch as the exemption of United States stocks from taxation is made imperative upon us by the judgment of the Supreme Court of the United States, and as both parties have appealed therefrom, the judgment of the court below should be affirmed without costs to either party, as against the other.

INGRAHAM, J. The decision of the court below as to the United States stock must be considered as correct under the recent decisions of the Supreme Court of the United States on the same question. The stock of the United States is exempt from State taxation, and here the assessment is

directly made upon such securities. The respondents' counsel concedes this, and does not argue this branch of the case.

It is objected, on the part of the appellants, that the place of assessment should be where the comptroller resides, upon the ground that he holds the funds as trustee, and he, not the company, should be assessed.

The property is the property of the company held by them, not deposited with the comptroller as security. It would not be taxable if the company did not carry on business in this State.

By the provisions of the R. S., vol. 1, 5th ed., p. 908, § 1, all lands and all personal estate within this State, whether owned by individuals or by corporations, are made liable to taxation, and by section 4, debts due on bonds are included under the term personal estate.

By 1 R. S., 5th ed., p. 908, § 5, every person is to be assessed in the town or ward where he resides for the personal estate owned by him, and by section 6, the personal estate of every incorporated company liable to taxation on its capital shall be assessed in the town or ward where the principal office or place of transacting the financial business is located, or where the operations of the company shall be carried on. The return states that the place of business of the corporation is in the city of New York, which is admitted by the demurrer.

The act of 1855, section 1, provides that all persons and associations doing business in this State, and not residents of the State, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of the State. Taking these provisions together, I think there can be no difficulty in holding that the place of assessment is the place where the operations of the corporation are carried on. Generally, under "persons," as used in laws providing for taxation, corporations have been included, unless some special provision of law provided in the same case for the taxation of corporations under another form of assessment. (*The People* v. *Utica Ins. Co.*, 15 Johns., 258.) And so corporations have been considered as inhabitants, for

the purpose of taxation. (*Ontario Bank* v. *Burwell,* 10 Wend., 180.)

These cases show that corporations are to be included under the general term persons in regard to their liability to taxation in the place where they carry on their business; and that there is no ground for the objection that the corporation was assessed in the city of New York.

The other question is, whether the plaintiffs are liable to be taxed upon the bonds of the city of Buffalo deposited with the comptroller. There can be no doubt but that those bonds are included under the term personal estate, as used in the statute; and the only question which can arise is whether they are property invested in any manner in the business which they carry on. Upon this point there can be but little doubt. The statute prohibits foreign corporations from carrying on business of life insurance until such company have deposited with the comptroller securities to the amount of $100,000 for the benefit of the policy holders of the company. (Laws of 1853, ch. 463, § 15.)

This deposit with the comptroller is necessarily made in connection with the business of the company. Without it they can do no business; and it is so deposited as to be security to those who may hold policies of the company. It is therefore used in the business of the company and in fact forms its capital in this State, which is liable to its creditors and comes within the definition of capital as defined in *The Mutual Insurance Co.* v. *Supervisors of Erie* (4 Comst., 448).

These securities so deposited with the comptroller form the same kind of capital as that of a domestic corporation incorporated for a similar purpose, in which the capital is the security for those who deal with it. Neither is actually invested in business and used for that purpose, but both form the basis on which the business is transacted and the security from which payment of claims is to be enforced.

So far as the assessment was made on the bonds of the city of Buffalo the same was properly made, and the order appealed from should be affirmed.

All the judges concurring,

Judgment affirmed.