THE PEOPLE ex rel. THE BAY STATE SHOE AND LEATHER COMPANY, Respondents, *v.* THOMAS McLEAN et al., Assessors, etc., et al., Appellants.

Foreign corporations are included in the provision of the act of 1855 in relation to the assessment and collection of taxes (chap. 37, Laws of 1855), which provides that all non-resident " persons and associations " doing business in this State " shall be assessed and taxed on all sums invested in any manner in said business the same as if they were residents."

Under this act, a foreign corporation doing business in this State, and having a principal office or place for the transaction of that business, is to be assessed upon all sums invested therein, as the personal estate of a domestic corporation is assessed (1 R. S., 390, § 6), *i. e.*, in the town or ward where such principal office or place of business is located, without regard to the *situs* of the property.

Where, therefore, certain materials and machinery belonging to the relator, a foreign corporation doing business in this State, and having only one office for the transaction of its financial concerns, which was in the city of New York, was assessed and taxed in the town of O., to H., an agent of the corporation and also a resident of that town, who had charge of the property therein, for the purposes of the business of the corporation, *held*, that no assessment upon the property could be made save in the city of New York; that the assessors of said town had no jurisdiction; and that the assessment was void.

A *certiorari* to correct the assessment-roll, by striking out the illegal assessment, was issued after the assessors had completed the roll and delivered it to the supervisor of the town. This fact appearing on the return to the writ, a supplemental writ was issued to the supervisor, commanding him to bring the roll into court, which was done, and a hearing was then had on both writs, on the merits. The objection that the writ was not the proper remedy because of the fact that the roll had passed out of the hands of the assessors was not raised. *Held*, that the defendants were concluded from raising it here.

(Argued February 6, 1880; decided February 24, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the second judicial department, affirming an order of Special Term, directing defendant Hoag, supervisor of the town of Ossining, in the county of Westchester, to strike out from the assessment-roll of that town for the year 1878 an assessment made by the defendants, the assessors of said town, of certain personal property in the town belonging to the relator, the Bay State Shoe and Leather Company. (Reported below, 17 Hun, 204.)

The relator is a foreign corporation, created under and by virtue of the laws of Massachusetts, and having its principal " office for transacting the financial concerns of the company " in the city of New York ; it had no other office for transacting its financial affairs within the State of New York. It owned certain materials and machinery situated within the precincts of the State prison at Sing Sing, in the town of Ossining, county of Westchester, used for the manufacture of boots and shoes by the labor of convicts in said prison, and such materials and machinery were there for that purpose. The boots and shoes so manufactured were the property of the relator, which had no other personal property in said town save as specified.. The defendants, assessors of the town of Ossining, assessed this property as against one Thos. Hapgood, a resident of the town, claiming that said Hapgood was the agent of the relator. The form of said assessment was as follows :

" Hapgood, Thos., for property in his possession as agent for the Bay State Shoe and Leather Company, stock and machinery, $16,000."

After completing the assessment-roll, notice was duly given of the time and place for the review of said assessments. At the proper time and place, the relator appeared by attorney, and asked that the assessment against its property be stricken from the roll, on the ground that it was improperly made, and was illegal and void. This application was denied. The relator then procured a writ of certiorari to review the action of the assessors. To this writ return

was made of the assessment, and proceedings had before the assessors; and that the roll had been duly certified and delivered by the assessors to the supervisor. A supplemental writ was then obtained, directed to the supervisor, requiring him to return the assessment-roll to the court, which was done.

The case was heard upon the merits, no objection being made in any form that the remedy by certiorari was not the proper one, because of the fact that the assessors had completed the roll and delivered it to the supervisor before the orginal writ was issued.

*M. L. Cobb*, for appellants. The writ of certiorari, directed to the assessors, should have been quashed by the Special Term, when it appeared by the return that the assessment-roll had been delivered to the supervisor before the writ was served upon them. (*People ex rel. Marsh* v. *Delancy*, 49 N. Y., 655; *People* v. *Reddy*, 43 Barb., 540; *People ex rel. Geo. Laws* v. *Commissioners of Taxes*, 9 Hun, 609.) The writ directed to the supervisor of the town of Ossining, should not have been granted, and should have been quashed on the return, for the reason that the supervisor had no power or duty, with reference to the assessment-roll, except to deliver it to the board of supervisors. (*People ex rel. Law* v. *Commissioners of Taxes*, 9 Hun, 609.) The writ of certiorari only goes to review the proceedings of inferior tribunals, exercising judicial functions. (*People* v. *The Board of Supervisors of Livingston County*, 43 Barb., 232; *People* v. *Mayor of New York*, 2 Hill, 10; *People* v. *Betts*, 55 N. Y., 600.) The assessment against Hapgood was exactly in accordance with the provisions of the statute on that subject. (§ 5, art. 1, of title 3, chap. 13, of part 1 of the Revised Statutes; 1 R. S. [5th ed.], 908; *Hoyt* v. *Commissioners of Taxes*, 23 N. Y., 232.)

*Charles H. Winfield*, for respondent. The property of the relator, a foreign corporation, must be taxed the same as

if it were a resident corporation. (1 R. S. [6th ed.], 935; as amended by Laws of 1855, chap. 37, § 1; *British Com. Life Ins. Co.* v. *Comm'rs*, 1 Keyes, 303; S. C., 1 Abb. Ct. App. Dec., 199; S. C., 28 How. Pr., 41.) The words "all persons and associations," in the act of 1855, have been construed to include foreign corporations. (*British Com. Life Ins. Co.* v. *Comm'rs, supra;* 1 R. S. [6th ed.], 935.) Since the assessors had no power or jurisdiction to make the assessment against the property of the relator, their action may be reviewed by this court as the supreme authority. (*People, etc.,* v. *Reddy*, 43 Barb., 539; *Starr et al.* v. *Trustees of Rochester*, 6 Wend., 565; *Le Roy* v. *The Mayor*, 20 J. R., 430; *Wilson* v. *The Mayor, etc.*, 4 E. D. Smith, 675.) The court has power to correct the assessment-roll at any time before it has passed beyond the jurisdiction of the board of supervisors, either in the hands of the assessors, or after its delivery to the supervisors. (*People, etc.,* v. *Reddy*, 43 Barb., 599; R. S., part 1, chap. 13, tit. 2, § 33; 1 R. S. [6th ed.], 940.)

Andrews, J. The general scheme of the statute for the assessment of the property of corporations other than real estate, for the purposes of taxation, is to assess their capital at its actual value, and their surplus funds, deducting therefrom the value of their real estate, and of shares of other corporations held by them, liable to taxation. (1 R. S., 414; Laws of 1853, chap. 654; id., 1857, chap. 456; *People* v. *Board of Assessors*, 39 N. Y., 81.)

It is in this way that the general prescription of the statute (1 R. S., 390, § 6), subjecting to assessment and taxation "all the personal estate of every incorporated company," is to be carried out. The scheme does not look to any valuation of the specific chattels or personal estate of corporations as such. The real estate of corporations is to be assessed in the town or ward where it is situated (§ 6), and after deducting from the value of the capital and surplus, the value of their real estate and shares in other corporations, the sum

remaining, necessarily represents the entire personal estate of the corporation, which ought justly, or which by the true construction of the statute can be subjected to taxation.

The place of assessment of the personal estate of corporations, is definitely prescribed. The statute is that it "shall be assessed in the town or ward where the principal office or place for transacting the financial concerns of the company shall be ; or if such company have no principal office, or place for transacting its financial concerns, then in the town or ward where the operations of such company shall be carried on." (§ 6.) In the case of a corporation which has a principal office or place for transacting its financial concerns, it is plain that the place where the office is located is the place of assessment of its personal estate, irrespective of its actual *situs*. The law provides for its taxation there on a complete and full valuation. It takes no notice of the actual location of the property, whether it is at the place where the assessment is made, or elsewhere within the State, in the hands of agents or otherwise. It necessarily follows from the system for taxing the personal estate of corporations, that the general provision of the statute (1 R. S., 389, § 5), authorizing the assessment of personal estate in the possession of an agent, etc., to be made against such agent, in the same way as if he was the owner, can have no application to corporations liable to taxation on their capital, whose property is in the hands of agents, but which have a principal office within the State. Otherwise double taxation would or might result, which could not have been intended. The statute contemplates a single assessment and taxation at a specified place, of the entire personal estate of corporations, by the assessment and taxation of their capital and surplus, as representing it, without regard to the actual *situs* of the property.

The statutory system to which we have referred, however, only regulates the taxation of domestic corporations. It is inapplicable to foreign corporations. The taxation of such corporations by taxing their entire capital and

surplus would in most cases be manifestly unjust, as it seldom happens that their capital is wholly employed within our jurisdiction. Prior to the statute of 1855 (chap. 37), the property of foreign corporations in the hands of agents here (not specially exempted) could be assessed and taxed as the property of the agent, under the general provision relating to the assessment of property in possession of agents. (1 R. S., 389, § 5.) The act of 1855 introduced a new provision into our system of taxation, in respect to the taxation of non-residents. It provides, that "all persons and associations doing business in the State of New York, as merchants, bankers, or otherwise, either as principals or partners, whether special or otherwise, and not residents of the State, shall be assessed and taxed on all sums invested in any manner in said business, the same as if they were residents of this State; and said taxes shall be collected from the property of the firms, persons and associations to which they severally belong." It was held in *The British Commercial Life Ins. Co.* v. *The Commissioners of Taxes, etc.* (1 Keyes, 303), that foreign corporations were comprehended within the words "persons and associations" in this act, and that a foreign insurance company, doing business in this State, was properly taxable in the city of New York, where the principal place of business or office of the agency existed. (See, also, opinion of Selden, J., in *The Parker Mills* v. *The Commissioners of Taxes,* 23 N. Y., 243.)

It will be noticed that the act of 1855, confines the assessment and taxation under the act to the sums *invested* in any manner, in the business conducted here. It does not authorize taxation of foreign corporations based on the whole capital, but only on the sums invested in business in this State, for the obvious reason that this part of their property alone, has the protection of our laws. The act also points out the mode of taxation, viz: "the same as if they were residents of this State."

Referring to the mode of taxing a resident corporation, and applying the same rule to foreign corporations doing business

here, and having a principal office or place for the transaction of their financial concerns, we ascertain where they are to be assessed, viz : in the town or ward where such office is located, and as the assessment when made is to be on all sums invested in their business, the assessment at such place must necessarily be exclusive, and embrace all their personal estate liable to taxation in this State.

These considerations lead to the conclusion, that the assessment against Hapgood, in the town of Ossining, of the tools and machinery in his possession as agent for The Bay State Shoe and Leather Company was unauthorized. That company was a Massachusetts corporation, doing business in this State, and engaged in the production of boots and shoes by the labor of convicts in the State prison at Sing Sing, and using there the tools and machinery which were the subject of the assessment. But the principal office, or place for transacting the financial concerns of the company, was in the city of New York, and it had no office for that purpose elsewhere. The assessors of the town of Ossining had therefore no jurisdiction to make the assessment in question. The assessment could only be made in the city of New York.

The objection that a *certiorari* to correct the assessment-roll, by striking out the illegal assessment, is not an appropriate remedy in this case, for the reason that the assessors had completed the roll, and delivered it to the supervisor of the town, before the original writ issued, was not taken by motion to quash or supersede the writ, or in any form, on the hearing. On the return of the original writ, showing that the roll was in the hands of the supervisor, a supplemental writ was issued, commanding him to bring it into court. The roll was brought in, in answer to this writ, and the hearing was then had, on both the original and supplemental papers, and no objection then, so far as appears, was made in any way, to the form of the remedy, and after hearing the case on the merits, the court made the order appealed from.

We think the appellants are concluded from now raising

the objection that *certiorari* was not a proper remedy, or that Hapgood should have been joined as relator, assuming that if seasonably taken the objection should have prevailed.

The order should be affirmed.

All concur.

Order affirmed.