THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE KEYSTONE GAS COMPANY, Respondent, v. GEORGE MARTIN and Others, Assessors of the Village of Olean, Appellants.

*Assessment of property of a foreign corporation, furnishing natural gas to consumers in this State — property taxable as real estate, under chapter 293 of 1881, must be assessed as the real estate of an individual — the value of the privileges of laying its pipes in the streets, and of contracts made with another company, cannot be considered.*

In this proceeding, instituted to review an assessment made by the assessors of the village of Olean upon the property of the relator, a foreign corporation doing business in the said village, it was shown that its property, within this State, consisted of mains, pipes and tanks for the reception and distribution of natural gas, laid or located beneath or upon the streets of the village under a grant from

194   PEOPLE ex rel. KEYSTONE GAS CO. v. MARTIN.

Fifth Department, March Term, 1888.

it, and that its business was the sale and distribution to consumers of natural gas for fuel and light, the company itself producing no gas of its own, but receiving, under a contract with another company, its supply of gas from the pipe line of the latter company into its own mains at the village limits.

From the return made by the assessors it appeared that the method adopted by the assessors, in arriving at the valuation in question, involved some estimate of the value of the relator's franchise from the village; of its contract with the company furnishing the gas, and of its income and the profits of 'its business resulting from that contract; if not as parts of its property at least as elements of the value of that property.

*Held*, that the assessment was erroneous.

That the system of mains, tanks and service pipes, as well as a small lot on which the tanks stood, were required, by chapter 293 of 1881, to be assessed as real estate, "at its full and true value," and that the value of the rights and privileges granted by the village to the company, and of the contract with the other company, could not be considered in determining that value.

The referee appointed in these proceedings, before whom the hearing was had, acting pursuant to the provisions contained in chapter 37 of 1855, based his valuation upon the cost of furnishing and laying the gas mains and pipes, considered as an investment.

*Held*, that it was error to apply the rule prescribed by that act to the valuation of real estate, as it applied only to personal property.

APPEAL from a judgment entered on the report of a referee, appointed in these proceedings instituted to review by *certiorari* an assessment imposed upon the property of the relator by the respondents.

*Fred S. Eaton*, for the appellants.

*Cary & Rumsey*, for the relator.

DWIGHT, J.:

The relator is a foreign corporation doing business in the village of Olean, in this State. Its property within this State consists of mains, pipes and tanks for the reception and distribution of natural gas, laid or located within the corporate limits of the village of Olean; all, by definition of the statute real estate (Laws of 1881, chap. 293), and an inconsiderable amount of personal property. The valuation of the assessors was $100,000; that of the referee $35,000.

The business of the relator in Olean is the sale and distribution, to consumers, of natural gas for fuel and light. It produces no gas of its own, but, under a contract with the National Transit Com-

PEOPLE ex rel. KEYSTONE GAS CO. *v.* MARTIN. 195

Fifth Department, March Term, 1888.

pany, receives its supply of gas from the pipe line of the latter company into its own mains at the village limits. Its system of piping is under a grant from the village corporation, laid beneath or upon the streets of the village.

In support of their valuation the assessors say by their return, that "the property, *rights and interests*" of the relator are of the value of $100,000; that they have "the *exclusive privilege*" from the authorities of the village to lay such mains, etc., and "*the right* to tear up, dig and encumber the streets with their operations;" "that *the income* from the said plant, lines, etc.," is very large, amounting to about $30,000 annually, and "that said plant *with its rights and privileges*, is very valuable." The return also states the terms of the contract of the relator with the National Transit Company, the number of its customers, the amount of its share of the gross receipts, and the amount of its "running expenses."

From these statements of the return it is not difficult to infer the method adopted by the assessors in arriving at the valuation in question. It is quite clear that that method involved some estimate of the value of the relator's franchise from the village; of its contract with the National Transit Company; and of its income and the profits of its business resulting from that contract; if not as parts of its property at least as elements of the value of that property; and herein lies the vice of the method.

The property assessed, the system of mains, tanks and service pipes, as well as the small lot on which the tanks stand, is real estate, and to be assessed as such. (Laws of 1881, *supra.*) As the real estate of a corporation, whether domestic or foreign, it is to be assessed as that of individuals (1 R. S., 389, 390, § 6), "at its full and true value as the assessors would appraise the same in payment of a just debt due from a solvent debtor." (Id., 393, § 17.)

Its "rights and privileges," granted by the village of Olean, are not taxable. They constitute a franchise which is in no case the subject of taxation except by special statute. (*Smith* v. *The Mayor*, 68 N. Y., 555; *People ex rel N. Y. El. R. R.* v. *Commissioners*, 82 id., 459; S. C., 19 Hun, 464.) It is true these rights and privileges constitute a condition of the existence of the relator's plant; but it must be considered that the municipality has received compensation therefor in the consideration for the grant, and the grantee is not

subject to further exaction, at the hands of the municipality, by way of taxation upon the grant itself. (See case last above cited.) It was also clearly inadmissible to estimate the value of the contract of the relator with the company from which it received its supply of gas, and the profits resulting therefrom, in fixing the valuation of its real estate. There is no difference between the case of a corporation selling and delivering gas for fuel and light, and that of a corporation or individual selling and delivering coal and oil for the same purposes. The owner of a coal yard in Olean obtains his supply of coal from a mining and transportation company in Pennsylvania. Whether the contract for such supply is favorable or unfavorable, and his business, consequently, profitable or otherwise, can not affect the value of his coal yards and sheds for the purposes of assessment and taxation. That real estate must be assessed at its "full and true value" dependent upon the extent and character of the land and structures, and their location, fitness and general eligibility for the purpose for which they are used; the assessors have no jurisdiction to inquire the price at which the dealer buys his coal, nor the excess of his receipts over his "running expenses." In the case of a corporation all these and other similar elements are likely to affect the value of its capital stock, and thus to become, indirectly, the subject of taxation at the place where the capital stock is taxable. They can have no consideration in determining the value of its real estate. It is true the case of a plant such as that in question is *sui generis;* there probably are in the village of Olean no standards of comparison for property of this character; no sales of similar property to establish a market value; it may be difficult to formulate a satisfactory rule for the particular case; but the difficulty of the case does not afford dispensation from the general rules of law applicable to the assessment of real estate, nor justify the adoption of methods clearly in contravention of such general rules.

On the other hand the rule apparently adopted by the referee in determining the value of this property, and contended for by counsel for the relator in support of this judgment, cannot be approved. That rule seems to have been derived from the statute of 1855 (Laws of 1855, chap. 37), and to have limited the valuation of the property in question to the amount of money actually invested therein. The findings state the *value* of the property at $35,000; but it appears

from the opinion of the referee that this valuation was "based upon the cost of furnishing and laying the gas mains and pipes considered as an investment, etc. ;" and, what is of more importance for the purposes of this review, no other evidence on the question of value was received on the trial, than that which related to the *cost* of the relator's plant.

It was error to apply the rule of the statute of 1855 (*supra*) to the valuation of real estate. The whole scheme for the taxation of corporations, of which that act forms a part, applies only to personal property. (*People ex rel. Bay State, etc., Co.* v. *McLean*, 80 N. Y., 254 ; see, also, opinion of Selden, J., in *People ex rel. Parker Mills* v. *Commissioners*, 23 id., 243.) No distinction in favor of corporations, either domestic or foreign, is made in respect to the assessment and taxation of real estate. Real estate, whether of individuals or of corporations, domestic or foreign, is taxed in the town or ward where it is situated, at its just and true value. The personal property within this State, of corporations, whether domestic or foreign, is taxed at the place where its principal office, within this State, is located, without regard to the particular *situs* of the property. The value of such property of domestic corporations is determined by deducting from the total value of its capital stock and surplus, the value of its real estate ; and that of foreign corporations by ascertaining the amount of money invested in its business anywhere in this State. (Laws of 1855, chap. 37.) This is the only provision of our statutes in respect to taxation which recognizes the amount of investment as any basis for an estimate of value. It applies to foreign corporations, but only to their personal property. To permit the application of the act of 1855 to the real estate of such corporations would, in many instances, result in the anomaly of taxing real estate in a town or ward other than that in which it is located.

For the error into which the learned referee has apparently fallen in this respect, the judgment must be reversed.

All concurred.

Judgment reversed and new trial ordered before another referee, costs to abide the final award of costs.