## CHARLESTON.

CARTER *v.* TYLER COUNTY COURT.

Submitted February 6, 1897—Decided January 25, 1899.

1. OIL LEASE—*Oil and Gas—Real Estate.*

    Where a party holds a lease upon land for oil and gas purposes, upon the usual terms and conditions, paying one-eighth of the oil produced as royalty, the oil while it remains *in situ* must be regarded as realty, and as remaining the property of the lessor until brought to the surface. (p. 810).

2. TAXATION—*Oil and Gas—Oil Lease—Personal Property.*

    The prospective production of oil from such well cannot be properly charged to the lessee, on the personal property books of the county. (p. 811).

3. TAXATION—*Fixtures—Personal Property.*

    Under chapter 29 of the Code, which provides for the assessment of taxes, the words "personal property," as therein used, shall include all fixtures attached to the land, if not included in the valuation of such land entered in the proper land book (p. 808).

Error to Circuit Court, Tyler County.

Application of John J. Carter to the county court of Tyler County for relief against erroneous assessment. From the judgment, petitioner brings error.

*Modified.*

John H. McCoy and Robert McEldowney, for plaintiff in error.

Anthony Smith, for defendant in error.

English, Judge:

John J. Carter gave notice to the prosecuting attorney of Tyler County that on the 17th day of January, 1894, he would apply to the county court of said county, under sections 94, 95, 96, and 97 of chapter 29 of the Code, for relief against an erroneous assessment on the personal property books of said county, in which he claimed he was erroneously charged with oil at a valuation of eighty-one thousand dollars,—ninety oil wells,—and that he would introduce evidence of such charge, and move said county court to enter an order granting him relief from such erroneous assessment. In pursuance of said notice, Carter presented his petition, specifying therein that he was assessed with ninety oil wells, at a valuation of eighty-one thousand dollars, and with seventy-two thousand dollars as the value of the capital used by him in his business, also setting forth therein the reasons why said assessments were illegal. and erroneous. The prosecuting attorney objected to the consideration of so much of the applicant's petition as referred to the assessment of the item of seventy-two thousand dollars, value of machinery, etc., as stated in column eighteen of said personal property book, upon the ground that no notice of the intention of said petitioner had been given him that he would ask the court to be released from the payment of taxes upon said item, to which objection the petitioner replied generally. As to this objection the record shows that due notice of the said petition was given the prosecuting attorney, and that he appeared on behalf of the State, and objected to the consideration by the court of so much of the applicant's petition as refers to the assessment of the item of seventy-two thousand dollars, value of machinery, etc., as stated in

column eighteen, and agreed that the said petition be continued until the 6th of February, 1894, which had the effect of waiving the notice required by statute, the only object of which being that the interest of the State, county, and district might be represented in the matter. Now, it appears that the sum of seventy-two thousand dollars was assessed upon the engines, boilers, rigs, and appurtenances, such as casing, etc., belonging to the ninety wells in the proceedings mentioned. This machinery and the appliances connected therewith were in use by the petitioner, Carter, in the production of oil from the wells he had leased; and, in determining whether this property was properly placed upon the personal property books of said county, we must determine whether they should be classed as realty or personalty.

I am not unaware of the diversity of opinion expressed by text writers, and the almost irreconcilable conflict of decisions by the different courts, which would necessarily be encountered in investigating the question as to when machinery and appliances used by tenants in the prosecution of the various industries and mining operations upon the lands of their lessors are to be considered personalty, and when realty; but we are spared the labor and perplexity attending this investigation by our statute, which provides (Code, c. 29, s. 46) that the "words 'personal property' as used in this chapter shall include all fixtures attached to land, if not included in the valuation of such land entered in the proper land book." The machinery and appliances about these ninety oil wells appear to have been assessed to the petitioner, Carter, at eight hundred dollars each, or seventy-two thousand dollars for the whole. The question as to whether such assessment was excessive or not was a question of fact, which was passed upon by the county court after hearing testimony in behalf of both parties, the court finding that the property was not excessively valued for taxation. The evidence was certified and the case appealed to the circuit court, and the finding of the county court was affirmed by that court; and, while there may be some slight conflict in the testimony as to the valuation of the property, this Court would not undertake to disturb the finding of the county court, or to place a proper assessment of valuation on said property,

especially when the county court was confronted with the witnesses and heard their testimony. The ruling of the county court and the circuit court, therefore, as to this property being properly placed on the personal property book, and the assessment not being excessive as applied to the machinery and appliances is affirmed.

The presecuting attorney also objected to the consideration of an affidavit presented with said petition, made by one S. G. Pyle, who stated therein that in the spring of 1893 he assisted J. K. Smith, assessor of Tyler County, W. Va., in making out said assessor's books, and extending levy on same, and that it was his information that the several oil wells in and about the town of Sistersville, consisting of rig, engine, boiler, casing, and other appurtenances thereto for the purpose of operating for oil, were assessed at eight hundred dollars each respectively, for the purpose of taxation, and in addition thereto, the several wells south of said town of Sistersville, Tyler County, aforesaid, within said county, producing petroleum oil, were assessed upon a production of ten barrels per day from the 1st of April, 1893, for the said assessment year, beginning at ten barrels on April 1, 1893, and running down to nothing on April 1, 1894, or an average of ten barrels per day for six months, and fifteen days at an assessed value of fifty cents per barrel. The wells north of said town were assessed at a daily production of fifteen barrels per day, on the same basis as the ten barrel wells, at the same rate per barrel, and for the same length of time. Which objections of the prosecuting attorney were sustained, and thereupon the court proceeded to hear the evidence of said S. G. Pyle, which was reduced to writing, and signed by him, which fact makes it unnecessary for us to pass upon the propriety of the action of the court as to the exclusion of the affidavit of said Pyle.

The depositions of John Carter and other witnesses were taken in open court, and the petitioner, by his attorneys, moved the court to strike from said personal property book the entry of the assessments against Carter for the year 1893; which motion, being argued and considered by the court, was overruled, the court holding that said property was not excessively valued for taxation, and that it belongs to the property books. To this opinion of the court the petioner, by his attorneys, excepted, and on his motion,

the court certified all the evidence taken in the case; and from these proceedings of said county court on March 15, 1894, John J. Carter obtained an appeal to the circuit court of Tyler County. On the 15th of August, 1894, the appellant, John J. Carter, by his attorneys, filed, with the papers of the cause, a copy of the entry of the personal property of said Carter on the property books of Tyler County for the year 1893; also 44 copies of certain oil leases, deeds, and assignments of oil leases, which were copied in the record. On the 17th of December, 1894, said appeal was heard by the circuit court, and the judgment of the county court appealed from was affirmed, and from this judgment of the circuit court this writ of error was obtained.

Did the circuit court err in affirming the judgment of the county court, and thereby holding that the property of the plaintiff in error, consisting of the prospective product of ninety oil wells for the year 1893, was not excessively valued for taxation, and that the same was properly placed on the personal property books? In determining this question it is proper that we should first consider the nature and character of the contract between the lessor and the lessee. One of the main features of the contract embodied in these leases is that the lessee shall put down the wells and bring the oil to the surface; and, when thus produced, the landlord is to have one eighth as rent or royalty, and the lessee seven-eighths. While the oil remains in the cavities of the rocks *in situ*, this Court has held, in *Wilson* v. *Youst*, 43 W. Va. 826, (28 S. E. 781) and *Williamson* v. *Jones*, 39 W. Va. 231, (19 S. E. 436) that it is part of the realty. The lessee may drill the well to the sand or rock in which the oil is contained; but the oil does not change its character from realty to personalty, or any portion of its ownership, until it is brought to the surface, and then seven-eighths of it becomes the property of the lessee.

Can we say that the commissioner of the revenue of Tyler County, on the 1st of April, 1893, in assessing the prospective product of the ninety wells as the property of the lessee, John J. Carter, was right? While he was the owner of the wells that had been drilled in the rocks, they were merely the conduit through which the oil might be drawn to the surface, and he had the privilege of pumping it to the

surface; but the oil in its place among the rocks, was not
his, and might possibly never be.  See *State* v. *Oil Co.*, 42
W. Va., 102 (24 S. E. 688). Again, it is part of the history
of this oil territory that what might be a productive, play-
ing well this week or this month may not be worth pump-
ing next week or next month.  Aside from all this, said
Carter, on the 1st day of April, 1893, was the owner of no
oil, the product of the year commencing on that day; and
he could not be assessed on property that he had not yet
acquired, and it would be too speculative to assess him on
property that he might thereafter acquire by future exer-
tion.  Now, the duty which the assessor attempted to per-
form in this instance is required by section 54 of chapter
29 of the Code, which provides that "it shall be the duty of
the assessor, as soon as possible after the first day of April
in each year, to ascertain all personal property subject to
taxation in his district with the  value  thereof  and  the
name of the person to whom the same ought to be assessed,
and to make proper entry thereof in his personal property
book."  If the assessor, in pursuance of this statute, had
gone to John J. Carter on the 1st day of April, 1893, and re-
quired him to return the list of his personal property under
oath, he surely could not have returned one gallon of oil
as the prospective product of said ninety wells for the year
commencing April 1, 1893. and ending April 1, 1894, for the
plain reason that no portion of the oil underlying his leases,
while it remained beneath the surface, was his property.
Section 40 of chapter 29 of the Code provides that "as to
real property the person who by himself or his tenant has
the freehold in his possession, whether in fee or for life,
shall be deemed the owner for the purpose of taxation."  See,
also, opinion of Holt, Judge, in *State* v. *Oil Co.*, 42 W. Va.
102, (24 S. E. 688) and *United States, Coal, Iron & Mfg. Co.*
v. *Randolph County Court* 38 W. Va. 201, (18 S. E. 566 Syl.
point 2.)  We are  not, however, required to pass on the
question as to what party should be assessed with the oil
*in situ* in this case, but do hold that it is not assessable as
personalty.  I therefore hold that the assessor of Tyler
county improperly placed upon the personal property books
of said county, as the property of said John J. Carter, ninety
oil wells, valued, for the year commencing April 1, 1893,
at eighty-seven thousand, seven hundred and fifty dollars,

and that the county court erroneously held that said property belongs on the personal property books. I am further of opinion that the circuit court erred in affirming the judgment of said county court. The judgment complained of is therefore reversed so far as it holds that said Carter was properly assessed with the item of eighty-seven thousand seven hundred and fifty dollars as the prospective product of said ninety wells as personal property.

*Modified.*