# CHARLESTON

## Peterson v. Hall.

Submitted February 1, 1905.   Decided March 28, 1905.

1. **Chancery Jurisdiction Over Conflicting Oil Leases—*Case Overruled.***

   Chancery has jurisdiction to decide between conflicting claims to rent or royalty oil under conflicting oil leases to the same lessee both as to that already produced, and that to be produced in future, by the lessee under the leases, which royalty oil is by the leases to be delivered to the credit of the lessors. *Zinn v. Zinn*, 54 W. Va. 483, overruled. (pp. 537, 539.)

2. **Surface and Minerals—*Different Owners of Same.***

   There may be separate distinct estates in different persons in the surface of land and oil and other minerals in it. (p. 540.)

3. **Surface and Minerals—*Owned by Different Persons— Tax Sale Sells Surface and Minerals.***

   When the surface of land is owned by one person, the oil in place by another, a sale for taxes in the name of the owner of the surface will pass also the oil owned by the other person, his estate not being charged on the tax books, under section 25, chapter 31, Code 1899. (p. 540.

4. **Oil Lease Not Taxable—*Estate in Oil to be Taxed to Surface Owner.***

   A lessee under an ordinary oil lease for years has no vested taxable estate in the oil still in the ground, either before or after he has found paying wells. It is taxable in the name of the surface owner. (p. 541.)

Appeal from Circuit Court, Wetzel County.

Bill by B. Walker Peterson against Camissee Hall and others. Decree for defendants, and plaintiff and Z. M. Price appeal.

*Affirmed.*

H. M. Russell and Hall & Hall, for appellants.

W. G. & C. A. Snodgrass, A. B. & R. F. Fleming, T. P. Jacobs, and U. N. Arnett, Jr., for appellees.

Brannon, President:

B. Walker Peterson made a lease, 5th March, 1892, for the production of petroleum oil and natural gas of a large tract of land in Wetzel county to the South Penn Oil Com-

'pany, the lease reserving to Peterson one-eight royalty in oil. The lease was for five years and as much longer as oil should be produced in paying quantity. Peterson conveyed sixty-four acres of the same land to Camissee Hall by deed 15th April, 1894. The deed to Hall states that it is subject to the lease of Peterson to the South Penn Oil Company, and also expressly excepted from the conveyance one-half of Peterson's interest in that lease, that is, kept half the oil royalty. This sixty-four acre tract was sold for taxes of 1898 in 1899 in the name of Hall, purchased by R. E. L. Snodgrass, who took a tax deed under his purchase, and subsequently conveyed the sixty-four acres to C. R. Snodgrass. Later, 19th November, 1901, C. R. Snodgrass made a lease of the sixty-four acres to the South Penn Oil Co. for oil and gas purposes reserving a royalty, and later conveyed half of his royalty oil to the company. The South Penn Oil Co. drilled wells on the other part of the large tract, and afterwards drilled wells on the sixty-four acres, which produced oil in paying quantity, and the oil was delivered for conveyance to market to the Eureka Pipe Line Company, a common carrier of oil. The sixty-four acres was not taxed in 1898 to either Peterson or the Oil Co. The Eureka Pipe Line Co. withheld the royalty because of a conflicting claim between Peterson and Snodgrass to the said royalty oil. It appears that the South Penn Co. drilled on the sixty-four acres under the Snodgrass lease, and delivered one-sixteenth to the Eureka Co. to his credit. Owing to the conflicting claims of Peterson and C. R. Snodgrass to the rental or royalty oil produced on the sixty-four acres Peterson brought a suit in equity in the circuit court of Wetzel county against Camissee Hall, the Pipe Line Co., the South Penn Co., R. E. L. Snodgrass, C. R. Snodgrass and others, asking that the South Penn Co. be enjoined from further developing or taking oil from the sixty-four acres, unless and until it should recognize the continued validity and operation, as to the sixty-four acre tract, of the lease of Peterson to the South Penn Oil Co., and until that company should deliver to Peterson his sixteenth share of the oil as it should be produced, and that C. R. Snodgrass should be enjoined from laying any claim to the sixteenth of the oil already produced or still in the land, and from doing anything by claim or otherwise to interfere with the development of oil on said

land under Peterson's lease to the South Penn Oil Co. The
bill prayed that the said two companies account for all the oil
already produced on said land, and for decree against them
therefor, either by delivery of the oil in kind or pay-
ment of its value in money. The bill also prayed that the
lease of C. R. Snodgrass to the South Penn Oil Co. be set
aside and held for naught as to the plaintiff's right, and that
C. R. Snodgrass be declared not entitled to any part of
Peterson's sixteenth in the oil produced, or to be produced,
from the land, and requiring the South Penn Oil Co. to
develop the land under the lease made to it by Peterson.
The bill stated that the plaintiff did not know the amount of
oil produced and asked for discovery thereof. The contest
is whether Peterson or Snodgrass owns the sixteenth oil
royalty. The bill further prays that it be decreed that Snod-
grass is not entitled to any part of Peterson's sixteenth of the
oil already produced, or of that to be produced in future, and
not entitled to any part of Peterson's sixteenth yet in the land.
The bill also charged that if the South Penn Co. elected to de-
velop oil under the Snodgrass lease, it was an abandonment of
the Peterson lease, and this lease had become void, and the
company had no right to take oil from the land. The bill also
asked that the lease by Snodgrass be cancelled. It also called
for a discovery of oil already produced. A decree dismissed
the bill, and Peterson appealed.

A question at once arises as to the jurisdiction in equity.
It is said there is none. It strikes the mind that equity is
the only forum which can give adequate relief. The absence
of adequate relief at law is a well known source of concur-
rent jurisdiction in equity. To drive a case brought in the
chancery court out of it we must be able to say that the com-
mon law court can give full, not partial, but full relief, adju-
dicating the rights and duties of all the parties having
interests in the matter before the court. To deny
equity jurisdiction because of a remedy at law, the legal
remedy, must not be merely partial, that is, going only
to a certain extent of the matters involved; but it must
be adequate to the demands of the particular case, and
as full, complete and efficacious as that given in equity.
It must not be doubtful. It must not leave open for future
litigation matters really and substantially involved. *Carney*

v. *Barnes*, 56 W. Va. 581, (49 S. E. 423). What the case, under its circumstances, requires, is a remedy which will at once and finally settle the rights of all the parties in the past and future. The plaintiff asks that both the South Penn Oil Company and the Eureka Pipe Line Company account to him. Which is to be held liable? Are both indifferently, or both differently, one primarily? What action at law will settle this and bind both? If one is sued, the judgment will not be binding on the other. The South Penn Co. produces the oil, and delivers it to the custody of the Eureka Co. Is the former to be held for improper delivery to the Eureka to the credit of Snodgrass? Is it liable for wrongful conversion? Is the Eureka Co. liable for the oil as Peterson's oil? The bill asks, somewhat in the alternative, that these companies deliver Peterson either oil or money for it. As to that produced already, which is liable? Detinue will not lie for Peterson's share, undivided, of the oil. How could the sheriff deliver possession of it under an execution on a judgment in detinue? Detinue would lie for barrels or sacks of wheat, but not for one hundred bushels in a mass of one thousand. Could the sheriff make division? Peterson cannot sue Snodgrass in ejectment or unlawful detainer for the land, from which the oil comes. He might sue for the value of the oil received by Snodgrass, but how often must he sue as production goes along? What the parties desire is that production go on by the South Penn and the contested oil be delivered to the Eureka Co. to the credit of the proper person, and this needs a suit to determine title to that contested share of oil between Peterson and Snodgrass, and bind both the companies. And there is the claim, too, of Z. M. Price to this contested share. And, further, the bill claims that if the South Penn Co. elect to claim under its lease from Snodgrass it is an abandonment of the Peterson lease, and should be so declared. What other remedy will give full, complete relief than an equity suit, which is unlike the formal straight-laced action at law, which cannot be moulded to answer all the purposes of this bill, while the equity remedy is plastic, suiting its pleadings and decree to answer all these behests. For those reasons I think there is equity jurisdiction. Also to avoid multiplicity of suits. This jurisdiction exists where the plaintiff would be obliged to bring a succession, perhaps

an indefinite number, of actions to get relief. 1 Pomeroy Eq., sections 245, 252.

Jurisdiction may also be placed under the head of partition. The bill may be construed as asking partition between Peterson and the South Penn Co., as the South Penn Co. and the Eureka Pipe Line Co. refuse to recognize Peterson's right to the oil produced. The reasons of this ground of jurisdiction will appear in the dissenting opinion of JUDGE POFFENBARGER in *Zinn* v. *Zinn*, 54 W. Va. p. 490. Peterson, if he had title, would have right to have a decree, either for his share in the oil in the pipes in kind, or in the nature of partition, partitioning the oil in respective shares or right. To reach such partition, to determine the right to the contested sixteenth of the oil, it was necessary to determine the right between Snodgrass and Peterson. This conclusion is not in accord with *Zinn* v. *Zinn*, 54 W. Va. 490. The cases are to an extent, distinguished. I was in great doubt as a member of the Court when that case was decided, and concurred very hesitatingly. Two members of the Court coming to the bench since that decision, decline to approve it, and my own examination of the subject has intensified my doubt and JUDGE MC-WHORTER assents to its disapproval, and so it is disapproved, as it denied equity jurisdiction. Point 1 in the syllabus may propound good law, but the case denies jurisdiction to conflicting claimants under different leases both as to oil produced, and to be produced, and the liabilities of the producing and carrying companies.

On the merits comes the question, Does Peterson or Snodgrass own the one-sixteenth of oil in contest between them? We think that Snodgrass owns it under his tax purchase. When the taxes were charged the oil of the sixty-four acres was in the land yet. Chapter 31, section 25, Code, makes a tax deed pass "such right, title and interest in and to said real estate as was vested in the person or persons charged with taxes thereon for which it was sold, at the commencement of, or at any time during the year or years for which said taxes were assessed, and all such right, title and interest therein of any other person having title thereto, who have not in his or their own name been charged on the land book of the proper county or assessment district, with the taxes chargeable on such real estate for the year or years for the

taxes of which the same was sold, and having actually paid the same as required by law, shall be transferred to and vested in the grantee in such deed." What operation has such statute provision in this case? What was the state of the title at the commencement of the tax year 1898? Peterson had conveyed the sixty-four acres to Hall reserving one-sixteenth of the oil. That conveyance made two separate corporeal estates. It vested in Hall the land including fifteen-sixteenths of the oil as part of the land, and the reservation of one-sixteenth in Peterson left in him that fraction. The estates in both were real estate. *Preston* v. *White*, 57 W. Va. 278, (50 S. E. 236); *Harris* v. *Cobb*, 49 W. Va. 350 *Sanderson* v. *Scranton*, 105 Pa. St. 469.

The South Penn Oil Co. did not operate on the sixty-four acres until after the tax deed to Snodgrass; but if it had found oil anywhere on the tract of one thousand and fifty acres leased to it by Peterson prior to the tax year 1898, it had a vested lease hold estate, for the large tract including the sixty-four acres. A lease for oil confers no actual estate until oil is found, but only a right to explore and produce oil. *Urpman* v. *Lowther Oil Co.*, 52 W. Va. 501.

Go upon the theory that the oil company did not find oil anywhere on the large tract before commencement of the tax year 1898. Then, the entire ownership of the sixty-four acres, including oil, at that date was in Peterson, Hall and the South Penn Co. Peterson owned one-sixteenth of the oil by reservation in his deed to Hall. Hall owned the land and oil, except the one-sixteenth reserved to Peterson. The South Penn Co. had only an inchoate right. No taxable estate was then in the South Penn Co., for want of development. *State* v. *South Penn Oil Co,*, 42 W. Va. 80; *Carter* v. *Tyler County*, 45 *Id.* 806. Thus, the land with everything in it was legally assessed to Hall. Under the statute above quoted the tax deed passed to Snodgrass the whole land—land and its oil—including Peterson's sixteenth, as he was not assessed with taxes. The South Penn Co. had no vested estate to be passed. The inchoate right if taxable would be destroyed by the tax deed.

But say that the South Penn Co. had on the tract leased to it by Peterson, but not on the sixty-four acres, produced oil before 1898. Then it would have a vested estate and prop-

erty in the oil in the whole tract including the sixty-four acres. Peterson had a royalty of oil issuing out of the land and as to the oil yet in the land, the legal estate in that fraction was still in Peterson, notwithstanding producing wells existed on the land, as the cardinal rule is that oil in place is still realty, and becomes personalty only when brought to the surface. The residue of the oil was then vested in Hall. The South Penn Co. had only a vested right to produce and bring oil to the surface, not the legal title to the oil itself. The oil company had no freehold, no taxable estate. *State* v. *South Penn*, 42 W. Va. 80. This is clearly so under *Carter* v. *Tyler County*, 45 W. Va. 806. It had no estate in soil or minerals. *Thompson's Appeal*, 101 Pa. St. p. 232. *State* v. *South Penn*, 42 W. Va, p. 102, distinctly so holds. Peterson owned a fraction of the oil in fee. Of course the land itself, with the balance of the oil was taxable to Hall. Therefore, the tax deed passed to Snodgrass all the oil in the sixty-four acres, the share of Hall as owner of the tract, and the share of Peterson, because not itself charged. The taxation of the tract to Hall, if paid, would have saved Peterson's interest from forfeiture for omission, and would have been payment for all. *State* v. *Low*, 46 W. Va. 451. But that is not our question, which is, what was the effect of delinquency and sale under Code, chapter 31, section 25.

. I have said that the South Penn Co. was not taxable with the oil in the ground. But even if any taxable estate were in it, that estate passed by the tax deed. So, in any view, Peterson's right was destroyed by the tax sale and vested in Snodgrass. The South Penn Company and the Eureka Pipe Line Company and Snodgrass were not accountable to Peterson. He lost title to the sixteenth.

For these reasons we affirm the decree.

## PRICE'S APPEAL.

Z. M. Price was a defendant to Peterson's bill in the above case. The bill stated that Camissee Hall had conveyed the sixty-four acres of land to said Price, 19th December, 1901, reserving Peterson's sixteenth of the oil. Price filed a cross bill in the case, in which he sets up said conveyance to him and claims the share of the royalty oil which was conferred upon Camissee Hall by the deed from Peterson, and

claimed the same against Snodgrass, and united with Peterson in asking relief. The decree denied any relief to Price and dismissed the cross bill, and Price took a separate appeal from the decree. The title of Camissee Hall to one-sixteenth of the oil having passed to Snodgrass under the tax deed dated 19th December, 1900, before Hall's deed to Price, Price got neither oil nor land by the deed from Hall. They went to Snodgrass under the tax deed. Therefore, we affirm the decree in dismissing Price's answer and cross bill.

*Affirmed.*