*In re* INDIAN TERRITORY ILLUMINATING OIL CO.

No. 3240.   Opinion Filed June 9, 1914.

Rehearing Denied September 8, 1914.

(142 Pac. 997.)

1.  **TAXATION—Legislative Power.**  The power to tax is legislative, and there must be distinct authority of law for every levy upon the people under that power.

2.  **SAME—Property Taxable.**  Property itself is a creature of law, and the discretion to select subjects of taxation rests solely with the Legislature.

3.  **SAME.**  Where the Legislature has omitted to provide for the assessment of certain kinds of property, it is not within the province or power of the court to make such assessments.  No property can be assessed until the Legislature has made proper provision for this purpose.

4.  **SAME—Oil and Gas Leases.**  The Legislature of this state has not selected oil and gas leases, as such, as subjects of taxation.

5.  **SAME—Interests in Real Property.**  The Legislature has not provided for a severance of the various interests which may be held in real property for purposes of taxation.

6.  **SAME—Assessment—"Real Property."**  By virtue of sections 7304 and 7307, Rev. Laws 1910, "real property," which, for the purpose of taxation, means "the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same," must be listed and assessed in the name of the owner of the land.

7.  **SAME—Real Property—Oil and Gas.**  Oil and gas, while lying in the strata of earth from which they are produced, must be taxed as real property to the owner of the land, if the land is taxable, under which for the time being they may lie.

8.  **SAME—Foreign Corporations.**  Corporations incorporated under the laws of a sister state, doing business in this state, are taxable the same as domestic corporations.

9.  **SAME—Exemption.**  A corporation for gain, incorporated under the laws of a sister state, doing business in this state, is not. exempt from state taxation, either in its corporate person or its

---

* Appealed to the Supreme Court of the United States.

property, because the federal government finds it convenient or profitable to deal with it in carrying out its policy toward the Osage Tribe of Indians.

10. **SAME—Valuation.** It is a .cardinal rule that, whatever property is worth for the purposes of income and sale, it is also worth for purpose of taxation.

11. **SAME—Sufficiency of Evidence.** Evidence examined, and held, sufficient to support the findings of the referee on the question of value.

(Syllabus by the Court.)

*Appeal from State Board of Equalization;*
*R. M. Campbell, Referee.*

In the matter of the assessment of the Indian Territory Illuminating Oil Company. To the report of the referee, to whom the cause was referred by the Supreme Court, the oil company excepts. Report of referee confirmed.

*Brennan, Kane & Michaelson* and *Hayes McCoy,* for appellants.

*Chas. West,* Atty Gen., and *W. C.. Reeves,* Asst. Atty. Gen., for the State.

*C. B. Ames, Stuart, Cruce & Gilbert, Preston C. West, Gilbert & Bond, Dillard & Blake, James B. Diggs,* and *Henry McGraw, amici curiae.*

KANE, C. J. This is an appeal from the action of the State Board of Equalization in assessing the property of the Indian Territory Illuminating Oil Company for purposes of taxation. The return made by the company showed the valuation of its physical property for the purposes of taxation to be $53,835.10. The State Board of Equalization found the value of its property for purposes of taxation to be $538,350. In this court the cause was referred to a referee, with directions to make findings of fact and conclusions of law. The referee found, in effect, that the Indian Territory Illuminating Oil Company is a corporation, organized under and by virtue of the laws of the state of New Jersey, with a capital stock of $3,500,000; that on the 16th day of March, 1896, the. Osage Nation of Indians in Oklahoma Ter-

ritory entered into a contract with one Edwin B. Foster, by the terms of which said Edwin B. Foster had a blanket lease upon the lands in Oklahoma Territory known as the Osage Indian Reservation, for the sole purpose of prospecting and drilling wells and mining and producing petroleum and natural gas only; that this lease covered a period of ten years from its date, and was approved by the Secretary of the Interior; that subsequent to the above date, said lease was extended, as to 680,000 acres of said reservation, for a period of ten years from the date of its original expiration, and by the terms of said extension said lease will expire on the 16th day of March, 1916; that prior to the extension of said lease the same had been assigned to the Indian Territory Illuminating Oil Company; that the oil company has subleased to something more than 100 persons and corporations most of the lands covered by said lease contract, as extended on March 3, 1905, and oil operations on said lands have been and are being conducted largely by such sublessees; that a small portion of the tract, the amount of which does not appear from the evidence, is operated by the parent company directly; that said company has been, and is, primarily engaged in the business of oil production in the territory covered by said lease with the Osage Indians, and has conducted its operations in the gas business as an incident to the development of the oil territory and the production of oil, and, to some extent, as a matter of accommodation to the citizens of Bigheart and Avant, and other persons residing along its pipe lines; that all the property owned by said company is located in Osage and Washington counties, Okla., and all its business operations are conducted in said state; that the total valuation of said company's stock on the 1st day of February, 1911, was $500,000.

After making several proper deductions from the above sum, the referee finds that the total valuation of the Indian Territory Illuminating Oil Company's property of every kind located in Oklahoma, over and above the amount locally assessed, was $447,169.98 on February 1, 1911; and concludes that said company is liable for taxation by the state of Oklahoma for the full value of its property, and that it is not exempt from taxation

upon the theory that it is a federal agent, or that it holds a franchise from the federal government.

The exceptions to the report of the referee filed by the oil company raise the following questions: (1) Was the evidence taken before the referee sufficient to sustain his findings that the appellant is a public service corporation? (2) whether section 21, article 10, Williams' Ann. Const., makes it the duty of the State Board of Equalization to assess all the property of public service corporations, including property not used in the public service, as well as that used in the public service; (3) whether the evidence taken before the referee is sufficient to sustain his finding as to the value of appellant's taxable property; (4) whether an oil and gas mining lease which grants to the lessee the right and privilege to go upon the lands of another for the purpose of exploring for oil and gas, and to produce oil and gas and transport the same from the leased premises, in consideration of the payment as royalty to the lessor of a part of the oil and gas discovered, and a stipulated price for each well producing oil and gas, is taxable; (5) to what extent is the appellant entitled to exemption from taxation on account of being a federal agency?

In a former opinion it was held:

"(1) Evidence examined, and held sufficient to sustain the finding of the referee that appellant is a public service corporation.

"(2) Section 21, art. 10, Williams' Ann. Const., makes it the duty of the State Board of Equalization to 'assess all railroad and public service corporation property.' By the foregoing provision of the Constitution, it is made the duty of the State Board of Equalization to assess all the property of any public service corporation, including property not used in the public service, as well as that used in the public service.

"(3) By reason of the foregoing statutes and section 7547, Comp. Laws 1909, which requires all property to be assessed in the name of the owner thereof, an oil and gas mining lease should be assessed as the property of, and in the name of, the owner of such lease, and not as the property of and in the name of the lessor.

"(4) A statute of the state which authorizes and directs the levy of an *ad valorem* tax upon an oil and gas mining lease from the Osage Tribe of Indians, approved by the Secretary of the Interior and extended by an act of Congress upon lands of such tribe of Indians, is not void upon the ground that the lessee or his grantee is a federal agent, or, upon the ground that such tax is a direct burden upon or interferes with the power of Congress to regulate commerce with the Indian tribes."

As the petition for rehearing filed herein does not seriously question the soundness of the first two holdings, we will assume that they are correct, and will proceed to examine the remaining propositions.

It is well settled that the power to tax is legislative, and there must be distinct authority of law for every levy upon the people under that power. 1 Cooley on Taxation, 546. Recognizing the general nature of the power, the Constitution of the state ordains (section 2, art. 10, Williams' Ann. Const.) that:

"The Legislature shall provide by law for an annual tax sufficient, with other resources, to defray estimated ordinary expenses of the state for each year."

And section 8 of the same article provides that:

"All property which may be taxed *ad valorem* shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. * * *" .

And section 14 provides that:

"Taxes shall be levied and collected by general laws, and for public purposes only. * * *"

From the foregoing constitutional provisions and others of similar import, it is obvious that it is left to the Legislature of the state to determine all questions of state necessity, discretion, or policy involved in ordering taxation, and to decide when, how, and for what public purpose taxes shall be levied and collected, and to select the subjects of taxation. 1 Cooley on Taxation, 546; *Thomas v. Gay,* 169 U. S. 264, 18 Sup. Ct. 340, 42 L. Ed. 740. Therefore, it becomes necessary to inquire what provision our Legislature has made toward vitalizing the constitutional mandate.

Section 7302, Rev. Laws 1910, provides that:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation."

Property itself being a creature of law, and the discretion to select subjects for taxation resting solely with the Legislature, it may be expected of any law for the levying of taxes that it will specifically or otherwise enumerate the kinds of property to be taxed. This is essential, since all property is never taxed and the assessor is without guide, unless the statute supplies it. *Lott v. Ross & Co.,* 38 Ala. 156; *Moseley, etc., v. Tift,* 4 Fla. 402; *De Witt v. Hays,* 2 Cal. 463, 56 Am. Dec. 352.

In this state sections 7304 and 7305, Rev. Laws 1910, supply this essential requirement. The first of these sections provides that:

"Real property for the purpose of taxation shall be construed to mean the land itself, and all buildings, structures and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same."

And the second section provides that:

"Personal property, for the purpose of taxation, shall be construed to include:

"First. All goods, chattels, moneys, credits and effects.

"Second. All improvements made by others upon lands, the fee of which is still vested in the United States or this state; all improvements, including elevators and other structures, upon lands the title to which is vested in any railway company or other corporation whose property is not subject to the same mode and rule of taxation as other property.

"Third. The stock of nurserymen, growing or otherwise.

"Fourth. The amount of money invested in bonds, stocks or credits outside of the state of Oklahoma.

"Fifth. All public stock and securities, and stocks or shares in any national or other bank or company incorporated under the laws of this or any other state, or of the United States, and situated and transacting business in this state.

"Sixth. All shares in foreign corporations, owned by residents of this state.

"Seventh. All horses and neat cattle, mules, asses, sheep, swine and goats.

"Eighth. All household furniture, including gold and silver plate, musical instruments, watches and jewelry.

"Ninth. Private libraries.

"Tenth. All vehicles for transporting persons or passengers for pleasure or profit.

"Eleventh. All wagons, vehicles or carriages and all implements or machinery appertaining to agricultural labor.

"Twelfth. All machinery and materials used by manufactories and all manufactured articles.

"Thirteenth. Annuities, not including pensions from the United States or any state of the Union, until paid into the hands of the pensioner.

"Fourteenth. All money, goods or property and capital employed in merchandising.

"Fifteenth. All agricultural implements or machinery, goods, wares, merchandise or other chattels, in this state, in possession of, or under the control of, or held for sale by any warehouseman, agent, factor or representative in any capacity of any manufacturer, or any dealer or agent of any such manufacturer.

"Sixteenth. Personal property belonging to persons or companies doing freight or transportation business and belonging wholly or in part to person within this state, for such part as is owned by said persons."

The significant features of the latter section for the purposes of this case are: The fifth subdivision thereof classifies stock or shares in any company incorporated under the laws of this or any other state as personal property for purposes of taxation; (2) nowhere in this enumeration is a leasehold classified as personal property for purposes of taxation, notwithstanding it is well settled that, according to the general classification of property for other purposes, a leasehold, being a chattel real, is personal property. Section 7319, Rev. Laws 1910, which casts upon the State Board of Equalization the duty of providing "for the use of the assessors suitable notices and blank forms for the listing and assessment of all property and such instructions as shall be needful to secure full and uniform assessments and returns," provides that all taxable property shall be listed according to the classification therein prescribed, which follows in effect the foregoing classification of property for purposes of taxa-

tion, and, like it, also, this enumeration does not classify a leasehold as either real or personal property.

Section 7307, Rev. Laws 1910, provides that:

"All taxable property, real or personal, shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of March of each year."

And section 7338 provides that:

"Every public service corporation organized, existing or doing business in this state shall on or before the last day of February of each year return sworn lists or schedules of its taxable property as hereinafter provided, or as may be required by the State Board of Equalization, and such property shall be listed with reference to amount, kind and value on the first day of February of the year in which it is listed; and said property shall be subject to taxation for state, county, municipal, public school and other purposes, to the same extent as the real and personal property of private persons."

In the instant case we have a corporation for profit, incorporated under the laws of the state of New Jersey, transacting business in this state. There can be no doubt that foreign corporations doing business in another state are taxable in the latter state, the same as domestic corporations, if the terms of its statutes are such as to warrant it. *People v. McLean,* 80 N. Y. 254. There are no definite rules for arriving at the value of property for purposes of taxation, unless the statute has prescribed them. Our statute contains a general direction that property must be assessed for taxation at its fair cash value estimated at the price it would bring at a fair voluntary sale; and the tribunal charged with the duty of estimating the value of such property must do so according to its best judgment and with honest purpose. To state in detail the many particulars in the mass of circumstances laying the basis of a rational judgment touching the value of corporate property for purposes of taxation, would serve no useful purpose. Generally, when the purpose of the law is to tax the corporation on the value of its property, this may be done either by assessing the capital stock as being presumptively the actual measure of its property, or, by assessing the property specifically on an estimated value. *Com-*

*monwealth v. N. Y., P. & O. Ry. Co.,* 188 Pa. 169, 41 Atl. 594; *Railway Co. v. Bachus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Adams Exp. Co. v. Auditor,* 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965; *Henderson Bridge Co. v. Commonwealth,* 99 Ky. 623, 31 S. W. 486; *Id.,* 166 U. S. 150, 17 Sup. Ct. 532, 41 L. Ed. 953; *Oswego Starch Factory v. Dolloway,* 21 N. Y. 499; *State v. Jones,* 51 Ohio St. 492, 37 N. E. 945; *State v. Anderson,* 90 Wis. 550, 63 N. W. 746.

There is no serious conflict in the evidence taken before the referee, and the question of value of the property involved must therefore turn upon the deductions which reasonably may be drawn therefrom, in the light of the well-established general rules governing such matters.

Briefly, the evidence shows that the company is capitalized at $3,500,000; that whilst it was incorporated under the laws of the state of New Jersey, its business is confined entirely to the state of Oklahoma. The referee found that all the property owned by said company and used in the conduct of its business is located in Osage and Washington counties, Okla., and all its business is conducted in said state. There is evidence to the effect that the business of the company pays one per cent. on its entire capital stock. This evidence, of course, would not justify the referee in finding that the par value of the stock or shares of the company was presumptively the value of its property for the purpose of taxation. But when we consider that, according to the report of the referee, less than one-seventh of its capital is invested in this state, and that the business done in the state pays one per cent. or more on its entire capital stock, we are not prepared to say that the finding of the referee is not supported by sufficient evidence. Whilst the business of the company in Oklahoma may pay only one per cent. on its entire capital stock, it pays more than seven per cent. on the part thereof invested within this state, which is in our judgment a very fair return upon the investment.

It is a cardinal rule, which should never be forgotten, that whatever property is worth for the purposes of income and sale,

it is also worth for the purposes of taxation. *Adams Exp. Co. v. Auditor, supra.*

The appellant complains that the referee unduly considered the oil and gas lease hereinbefore mentioned in reaching his conclusion as to the value of appellant's property. Whilst we are not convinced that this is so, we are satisfied that there is sufficient other evidence in the record to support the finding of the referee as to the value of the company's property.

The provisions of the statute already adverted to provide a complete system for the levying of all taxes upon an *ad valorem* basis; and we can find no warrant in any of them for levying an *ad valorem* tax upon an oil and gas lease as such. Generally, an oil and gas lease, a school land lease, or a lease of any sort, for that matter, undoubtedly is property. But, as we have hereinbefore stated, property itself is a creature of the law, and the classification thereof for purposes of taxation belongs exclusively to the legislative department. The Legislature, in classifying property for the purpose of taxation, is not required, and does not, always follow the common-law classification of property for other purposes. It will frequently be found that the enumeration of property in statutes as real or personal for the purposes of taxation differs considerably from what it would be for other purposes in the same state. *Steere v. Walling,* 7 R. I. 317.

To determine that a certain article is property, according to the common-law or general classification, is not to determine whether it is taxable; to be taxable it must be selected as a subject of taxation according to the legislative classification for that purpose. Therefore the general rule is, no property can be assessed until the Legislature has made proper provision for this purpose; and, where the Legislature has omitted to provide for the assessment of certain kinds of property, it is not within the province or power of the court to make such assessment. *Willis, Ex'r, v. Commonwealth,* 97 Va. 667, 34 S. E. 460; *In re Taxation Patented Min. Lands,* 9 Colo. 622, 21 Pac. 471; *People v. Feitner,* 167 N. Y. 1, 60 N. E. 265, 82 Am. St. Rep. 698; *Wisconsin Ry. Co. v. Taylor Co.,* 52 Wis. 37, 8 N. W. 833; *Daugherty v. Thompson,* 71 Tex. 192, 9 S. W. 99; *Trammell v. Faught,*

74 Tex. 600, 12 S. W. 317; *De Witt v. Hays,* 2 Cal. 463, 56 Am. Dec. 352; *Carter v. Tyler County,* 45 W. Va. 806, 32 S. E. 216; 43 L. R. A. 725; *Williams v. Triche,* 107 La. Ann. 93, 31 South. 926. It is also observable that in many jurisdictions various interests in real property for purposes of taxation are made severable and assessable in the names of the owners of the respective interests. That, however, is not the case in this state. Under our system of taxation, real property, which for purposes of taxation means the "land itself, all buildings, stocks, improvements, or other fixtures of whatsoever kind thereon and all rights and privileges thereto belonging or in anywise appertaining, and all mines, minerals, quarries or trees under or on the same," must be assessed in the name of the owner of the land. This is in consonance with the general rule, which seems to be that where the law does not provide for a severance for purposes of taxation, and the lease is silent upon the subject, the obligation to pay taxes upon the leased premises devolves upon the lessor. *Freeman v. State,* 115 Ala. 208, 22 South. 560; *People v. Barker,* 153 N. Y. 98, 47 N. E. 46; *East Tennessee, etc., R. Co. v. Morristown* (Tenn. Ch.) 35 S. W. 771. However, the lessee's assumption of the payment of taxes and assessments does not relieve the lessor from his liability, nor does it enable the taxing authority to secure a personal judgment against the lessee. 1 Desty on Taxation, 436; *Yazoo & M. V. R. Co. v. Adams,* 76 Miss. 545, 25 South. 366; *Miles v. Delaware & H. Canal Co.,* 140 Pa. 623, 21 Atl. 427; *C., R. I. & P. Ry. Co. v. Ottumwa,* 112 Iowa, 300, 83 N. W. 1047, 51 L. R. A. 763.

But the fact that the Legislature has omitted to provide specifically for the assessment of any particular kind of property does not furnish ground for assuming that the Legislature has illy followed the constitutional mandate that all property shall be taxed at its fair cash value. For example, article 14, chapter 72, Rev. Laws 1910, provides for the taxation of railroads upon a gross revenue basis. Yet it will not be contended that this system does not make ample provision for taxing all the property and franchises of the railroads situated within the state. The same may be said of the case at bar. The law specifically pro-

vides for the taxation of the "stock or shares" of corporations as personal property upon an *ad valorem* basis, and it has been held that for the purposes of taxation, the word "stock," in a statute authorizing taxation of the stock of corporations, means, not only stock subscriptions, but the actual tangible property of the corporation. *M. C. R. Co. v. Porter,* 17 Ind. 380; *State v. Branin,* 23 N. J. Law, 484. And this is not all. In addition to the taxes levied upon an *ad valorem* basis, article 13, c. 72, provides for a gross revenue tax upon every person, firm, association, or corporation, engaged in the mining or production in this state of petroleum or other mineral oil, or of natural gas, equal to one-half of one per cent. of the gross receipts from the total production of petroleum or other mineral or natural gas. We, therefore, conclude that oil and gas, while lying in the strata of Mother Earth, from which they are produced, constitute a sort of subterranean *faera naturea* which, if taxed at all prior to being reduced to possession, must be taxed as real property to the owner of the land under which for the time being they may lie, and cannot be taxed against one who has a mere lease or license to go upon the premises, search for and, if found, take them away. *Frank Oil Co. v. Belleview Gas & Oil Co.,* 29 Okla. 719, 119 Pac. 260, 13 L. R. A. (N. S.) 487; *Kolachny v. Galbreath,* 26 Okla. 772, 110 Pac. 902, 38 L. R. A. (N. S.) 451; *Carter v. Tyler County,* 45 W. Va. 806, 32 S. E. 216, 43 L. R. A. 725; *Kansas Natural Gas Co. v. Bd. of Com'rs of Neosho Co.,* 75 Kan. 335, 89 Pac. 750; *Peterson v. Hall,* 57 W. Va. 535, 50 S. E. 603; *Barnes v. Bee* (C. C.) 138 Fed. 476; *Hughes v. Vail,* 57 Vt. 41; *State v. South Penn Oil Co.,* 42 W. Va. 80, 24 S. E. 688.

It seems to us that this is the most scientific method for imposing taxation upon this class of property. To undertake to tax an oil or gas lease is to undertake to impose a tax upon the illimitable vista of hope. Many instances are known where lessees have paid thousands of dollars bonus for a lease and have not discovered a drop of oil; and many other instances are known where the leases have cost comparatively nothing, and oil has been found in enormous quantities. Whether oil is under any

particular tract of land is beyond the ken of man until a well has been drilled, and even then no one can foresee how long the well will last, or what its production will be. A great many people speculate in these oil and gas privileges; a few get rich, while others fail. Under the system of taxation devised by the Legislature the wealth produced by the oil industry, the production of oil, the capital invested in its production, the oil on hand, and the oil in place are taxed. We can find no justification in the law for any additional exactions.

Primarily this company is not a federal agency. It is a corporation for profit, incorporated under the laws of the state of New Jersey, and doing business·in the state of Oklahoma, with which the federal government finds it convenient or profitable to deal in carrying out its policy toward the Osage Tribe of Indians. What the state is attempting to do is to tax the property of this corporation within its borders. This certainly is a proper exercise of the taxing power of the state. *In re Assess. W. U. Tel. Co.*, 35 Okla. 626, 130 Pac. 565. Borrowing the language of Mr. Justice Holmes, in *Baltimore Shipbuilding Co. v. Baltimore,* 195 U. S. 375, 25 Sup. Ct. 50, 49 L. Ed. 242:

"It seems to us extravagant to say that an independent private corporation for gain, created by a state, is exempt from state taxation, either in its corporate person, or its property, because it is employed by the United States, even if the work for which it is employed is important and takes much of its time."

As the authorities sustaining this view of the case are collected in *McAlester-Edwards Coal Co. v. Trapp, post,* recently handed down, it will be sufficient to refer to that case as controlling on this phase of the case at bar.

The report of the referee is therefore confirmed.

All the Justices concur.