SEARS v. RANDOLPH et al.

No. 31324.   March 6, 1945.

*156 P. 2d 595.*

T. Murray Robinson, of Oklahoma City, for plaintiff in error.

Robert L. Cox, of Oklahoma City, for defendants in error.

CORN, J. This is an action to quiet title based upon a resale tax deed, wherein mineral rights are involved. Judgment was for the plaintiff, quieting the title subject to the mineral rights held by certain defendants, and the plaintiff brought this appeal for the modification of the judgment so as to quiet his title to the mineral rights also.

It appears from the record that the lots involved, lots 10, 11, and 12, all in block 20, Shillings addition to Oklahoma City, Okla., were purchased by the county at an original tax sale for taxes levied and assessed for years during which the mineral rights therein were not subject to said sale, due to production of oil and the payment of the gross production tax thereon. That subsequent to said time, and prior to the issuance of the resale tax deed, production of oil and the payment of the gross production tax ceased, and thereafter at least two years of delinquent ad valorem taxes had accumulated before the resale tax deed was issued.

The issue involved is whether the cancellation by resale tax deed of subsequent tax liens, valid against the mineral estate, operates to vest in the purchaser the title to the mineral estate, even though the tax lien, which

was the basis of the original sale, would not extend to such mineral interest.

In support of his contention that the cancellation of subsequent tax liens which affected the mineral estate in the realty operates to vest in him the title to the mineral estate also, the plaintiff cites section 432f, Title 68, 1941 O.S., the pertinent portion of which reads as follows:

"The issuance of such deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties and costs previously assessed or existing against said real estate, and of all outstanding individual and county tax sale certificates; and shall vest in the grantee an absolute and perfect title in fee simple to said lands; . . . ."

And also cites Shnier v. Vahlberg, 188 Okla. 471, 110 P. 2d 593, in which the court considered the question of what taxes were canceled by resale deed, and the nature of the lien of such taxes so canceled. After quoting the statute the court then said:

"The county contends that since the property was not sold to the county at the 1937 and 1938 delinquent tax sales, the county had no lien 'sold' to it for the 1936 and 1937 taxes which could be included in the resale. It criticises the decisions in State v. Moore, 78 Okla. 164, 189 P. 511, and State v. Ryan, 96 Okla. 216, 221 P. 761, which hold that where the county becomes the purchaser at a delinquent tax sale, for lack of bidders, it is not necessary to sell the land for subsequent delinquent taxes to give the county a lien for such subsequent taxes. We do not deem it necessary to further consider the question, in view of the provision of section 12723, O.S. 1931, 68 O.S.A. § 353, that 'taxes upon real property are hereby made a perpetual lien.' This lien exists regardless of whether property is sold at the delinquent tax sale held in November. That sale is merely a necessary step in the process of collection of the tax and foreclosing the lien, for without it the treasurer has no authority to issue a tax sale certificate on the land or to sell it at resale.

"For what ad valorem taxes, then, is the property advertised and sold at resale? We think the answer is found in the quoted statutory provisions. It is for all the ad valorem taxes that are delinquent as of the date when the resale notice should be first published (ch. 86, S.L. 1933, 68 O.S.A. § 531), and for which it is the duty of the treasurer to advertise them in the resale notice. Said sum would of course include the accumulated interest, penalties, and costs. And under section 7 of the act, such delinquent taxes, penalties, interest, and costs are canceled by the resale, and the resale deed vests in the 'grantee an absolute and perfect title in fee simple,' free from all such delinquent taxes, interest, penalties, and costs. Any other holding would be contrary to the legislative intent plainly expressed in the statute and would discourage rather than encourage the purchase of property at the resale. Few persons would care to carefully check all prior tax records to be sure that they would not be taking title burdened with such back taxes."

The same reasoning and the same principle applies in this case. The resale at which the lots involved herein were sold could not have been held had it not been for the original tax sale predicated upon a delinquency which occurred in a year in which minerals were being produced. This, however, was but the inception of the tax lien foreclosure proceedings, and we must consider the proceedings as a whole, and the ultimate design of the law to vest in the grantee of a resale deed "an absolute and perfect title in fee simple in the lands sold." It is admitted that part of the tax lien included in the tax resale accrued subsequent to production and payment of the gross production tax, and it is well settled and beyond question that this was a valid lien against the mineral rights in the land. In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 P. 997; State v. Shamblin, 185 Okla. 126, 90 P. 2d 1053; State v. Kirchner, 185 Okla. 129, 90 P. 2d 1055; Secrest v. Williams, 185 Okla. 499, 94 P. 2d 252; Swan v. Kuehner, 157 Okla. 37, 10 P. 2d 707. Under the facts in this case, to hold that the resale deed does not affect the mineral rights involved would defeat the very purpose of the statute.

Therefore, the judgment of the trial court is modified so as to quiet the title in the plaintiff to the entire interest in the realty, including the minerals.

HURST, V.C.J., and RILEY, OSBORN, BAYLESS, WELCH, and ARNOLD, JJ., concur. GIBSON, C.J., and DAVISON, J. dissent.