STATE ex rel. COM'RS OF THE LAND OFFICE v. ARMSTRONG et al.

No. 32208.    Dec. 2, 1947.

188 P. 2d 347.

Everett H. Welborn and Bruno Miller, both of Oklahoma City, for plaintiff in error.

Reuel W. Little and Jack Smith, both of Madill, for defendants in error.

A. D. Cochran and Carland Smith, both of Okmulgee, for Sam K. Viersen, amicus curiae.

ARNOLD, J. In 1917 J. M. Newton was the owner in fee simple of the N.E.¼ and the N.E.¼ of the N.E.¼ of the S.E.¼, section 21, township 7 south, range 5 east, in Marshall county. In September of that year Newton executed and delivered two mineral deeds each being for an undivided one-fourth interest in the oil, gas and other minerals in and under the above described land, the terms of said grants being 99 years. These deeds were duly recorded. In 1926 J. M. Newton borrowed from the Commissioners of the Land Office of the State of Oklahoma a sum of money to evidence which he and his wife executed a note secured by a mortgage upon the above described lands. In 1942 these lands were sold at tax resale to Marshall county and a resale deed was executed and delivered to the chairman of the board of county commissioners. Thereafter the county commissioners sold the land thus acquired to J. I. Henshaw. The terms and conditions of said mortgage having been broken the Commissioners of the Land Office brought a foreclosure action in the district court of Marshall county and recovered a decree therein on October 11, 1943. The mortgage contained the "appraisement waived" clause and after six months from the date of the judgment the lands were advertised and sold by the sheriff and at said sale the Commissioners of the Land Office became the purchasers. Thereafter, on May 29, 1944, this sale was confirmed by the court and a sheriff's deed executed and delivered to the purchasers, and duly placed of record. On September 23, 1943, J. I. Henshaw and wife executed and delivered a quitclaim deed to the lands here involved to M. U. Ayers conveying all of their right, title, and interest therein. On June 9, 1944, M. U. Ayers executed a mineral deed to the plaintiffs herein conveying to them an undivided one-half interest in the minerals in and under the lands here involved, said deed reciting the individual interest acquired by each of the plaintiffs, which deed was duly recorded. On June 30, 1944, the plaintiffs commenced this action to partition the mineral interest in and under these lands upon the grounds that by reason of the limitations and restrictions imposed by law upon the Commissioners of the Land Office in the leasing and sale of lands belonging to the state, and the refusal of the Commissioners to join with them in a lease acceptable to them, their cotenancy with the state in the mineral interests under these lands was undesirable.

The parties will be referred to herein as they appeared in the trial court.

For reversal of the judgment, defendants rely upon three propositions in their briefs presented in the form of questions directed to this court, which questions read:

"Can the State of Oklahoma be sued in its sovereign capacity without its consent having been given?

"Can a decree in partition be granted where one party is the owner of all the surface rights and part of the mineral rights and the partitioning party is the owner only of an undivided interest in the bare mineral rights?

"Can a decree in partition be granted against the state in the face of an express statutory provision requiring the state to retain an undivided one-half (½) interest in the oil, gas and mineral rights in and under all land owned by it?"

We find it necessary to consider only the third proposition.

Plaintiffs, as the basis of their claim of title to an undivided one-half interest in these minerals, introduced in evidence and relied on the two mineral deeds executed by J. M. Newton and wife in 1917. They then introduced in evidence numerous other deeds for the purpose of showing a continuous chain of title to their mineral interest acquired by them from M. U. Ayers. The last of these mesne conveyances was the quitclaim deed from J. I. Henshaw who acquired his title from the board of county commissioners, the purchasers at the 1942 tax resale for delinquent ad valorem taxes. It is conceded that the land involved is undeveloped for oil or gas and is located in what is known as "wildcat territory". When the land was sold at the 1942 tax resale, the undivided mineral interest claimed by plaintiffs, insofar as its validity is dependent on the Newton deeds of 1917, was extinguished. Secrest v. Williams, 185 Okla. 449, 94 P. 2d 252; Three-in-One Oil & Gas Co. v. Bradshaw, 192 Okla. 309, 135 P. 2d 992; Sears v. Randolph, 195 Okla. 200, 156 P. 2d 595. The words "for a period of ninety-nine years from this date," in the mineral deeds executed by the Newtons in 1917, do not furnish greater immunity from the lien of ad valorem taxes in unproven and "wildcat" territory than do the words of general warranty in the usual form of mineral deed. 60 O. S. 1941 §21; In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 P. 997.

Therefore, the rights of plaintiffs to demand a partition of the mineral interests in these lands depend upon what transpired subsequent to the execution and delivery of the tax resale deed in 1942. The limitation on the period of ownership put in the deed to the one-half mineral interest of plaintiffs by Newton was extinguished by the resale.

Defendants' decree in foreclosure and order of sale was entered October 11, 1943. Henshaw's quitclaim deed to Ayers was executed September 29, 1943, while the foreclosure suit was pending. The order confirming the foreclosure sale was entered and the sheriff's deed delivered May 29, 1944. On the same day, a supplemental order of confirmation was entered fixing the mineral interest acquired by the purchaser as an undivided one-half thereof. On June 9, 1944, Ayers and wife executed a mineral deed to the plaintiffs herein conveying to them an undivided 85-170th interest in the oil, gas and other minerals in and under the lands here involved. By this deed plaintiffs became cotenants with the state in the mineral interests here sought to be partitioned.

In their petition plaintiffs alleged "that the said Commissioners of the Land Office of the State of Oklahoma cannot execute an oil and gas lease for a longer period than five years (evidently referring to 64 O. S. 1941 §281) and requires notice to be published for many weeks in the county where the land is situated and that it is undesirable on the part of plaintiffs to hold said minerals with the State of Oklahoma". There was no proof of the allegation that plaintiffs presented a lease executed by and acceptable to them to the Commissioners of the Land Office for acceptance and execution by them, though the journal entry of judgment recites that this was done and that the Commissioners refused to execute the lease.

Plaintiffs' relation of cotenancy with the state in these mineral interests was voluntarily assumed by them with full

knowledge of all the facts and presumptive full knowledge of the law which hedged about the leasing of the state's interest therein with limitations and restrictions in the public interest of which plaintiffs now complain. Having voluntarily assumed this relationship with full knowledge of the facts and the law affecting such relationship, we think the rule volenti non fit injuria must be applied.

This is not a proceeding between private parties adversely interested, but involves the public interest and the public policy of the state in relation to its common school fund. That public interest and public policy are reflected by the provisions of sections 1 and 2, art. 11, Constitution, and legislation conforming thereto. See 64 O. S. 1941 §§82 and 96. By these constitutional and statutory provisions the state accepted all grants of land and donations made by the United States for the benefit of the common school fund, pledging the full faith of the state to maintain the same as a sacred trust and keep it for the uses and purposes for which granted. The state acquired this property through enforced collection of a debt due the common school fund. To partition the mineral interest would impair the market value of these lands and probably burden the surface of at least a part thereof with development activities, and in the event of production no royalty therefrom would accrue to the state. The possibility of further loss by drainage would be ever present. The trial court apparently held that plaintiffs' right to partition is absolute. We do not think that any private right is absolute when it conflicts with the public interest and when its exercise contravenes public policy.

Judgment of the trial court is reversed and judgment here rendered for defendants.

HURST, C.J., and RILEY, CORN, GIBSON, and LUTTRELL, JJ., concur. DAVISON, V.C.J., and BAYLESS and WELCH, JJ., dissent.